UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                      CRIMINAL NO. 04-80335

       v.                               DISTRICT JUDGE VICTORIA ROBERTS

DERRICK WOODLEY (D-6),          MAGISTRATE JUDGE VIRGINIA MORGAN

       Defendant.
_____/

## REPORT AND RECOMMENDATION DENYING DEFENDANT'S MOTION TO SUPPRESS

This matter is before the court on the motion of the defendant Derrick Woodley to suppress evidence and statements of the defendant on the grounds that they are the fruit of an illegal arrest and seizure of the defendant on or about February 5, 2003. A evidentiary hearing was held before the magistrate judge. Defendant submitted a supplementary brief. For the reasons discussed in this Report, the court finds that the arrest or seizure of the defendant was lawful under the Constitution and there was no violation of the Fourth Amendment. Therefore, it is recommended that the motion be denied.

This case involves multiple defendants and numerous deliveries of marijuana. The incident upon which this motion is based is separate and distinct from the arrests discussed in earlier Reports in this same case. However, like those, this incident arose from an out-of-state arrest of an individual who was driving a load of marijuana to Detroit. The testimony at the

hearing by co-case agent S/A Bell of the DEA established that on or about January 27, 2003, Missouri law enforcement officers stopped a vehicle with approximately 700 pounds of marijuana in it.  The driver agreed to cooperate and to attempt a controlled delivery of the marijuana to the persons in Detroit who were expecting it, a Reginald Dancy and some person known only as "E," (sometime after the arrest identified as Eric Woodley, brother and co-defendant of the instant defendant).  The driver became a cooperating witness and DEA agents began to set up the delivery.  The delivery, originally scheduled for January 28, 2003, did not take place.  On February 5 a person identifying himself as "E" said half the load of marijuana was his and he wanted to arrange for its delivery.  The driver/cooperating witness (CW) spoke with two people–the one who initiated the series of phone calls and identified himself as "E" and another unknown male, also identified some period of time after the arrest of defendant as a Lamar Williams (for the sake of reference here, unidentified male later identified as Lamar Williams, or UMLILW).  "E" and UMLILW told the CW to deliver the marijuana to a particular location: 23rd and Fort Street, in the city of Detroit.  The government offered photographic exhibits to assist the court with understanding the area and locations.  These were admitted and are also attached to the government's pleading.  Consistent with the photographs, the meet area is an unpopulated, industrial-type area, with  open ground and abandoned buildings and warehouse-type structures, not an area of residential dwellings.  Delivery of the marijuana was to occur approximately 8 or 9 p.m.  Law enforcement agents set up surveillance in the area.  There were no other vehicles around.

A representative sample of the marijuana was provided to the CW and placed in the vehicle. The CW wore a body recorder. He drove to the scheduled meet area and waited. There were a series of phone calls between "E", UMLILW, and the CW. After some time, at approximately 8:42 pm, UMLILW pulled up to the CW's vehicle on a paved area just off 23rd street. There were no other vehicles observed by law enforcement near this "meet area." UMLILW and CW exited their respective vehicles and greeted each other. UMLILW took the marijuana from CW's vehicle and carried it toward his red Dodge pick up truck.

At that point, law enforcement officers and vehicles "were moving in to effect an arrest" when a black Lincoln Navigator pulled right in front of the police vehicle and headed toward the meet area. The agent testified that the driver pulled to his right, off the road, just behind the meet area, just deep enough to be off the road way and on private property. The agent activated the emergency lights of the law enforcement vehicle and the Navigator pulled back into the roadway and started to leave the area.

The agent ordered the vehicle to be stopped because of his conclusion that it may be involved in the transaction. It had just pulled into the area, there were no other vehicles observed in area, two men had been involved in the phone calls setting up the meet and only one was in the Dodge pickup. The Navigator was possibly the second individual involved in the transactions (either "E" or UMLILW) and the agent expected that there would be more than one person involved in the pick up of the marijuana.

The Navigator was stopped by agents O'Brien and Dunn within half a block. The driver was defendant Derrick Woodley. He was ordered out of the vehicle, handcuffed and advised of

his *Miranda* warnings. No one else was present in the vehicle. He stood by the door of his vehicle and was asked about his presence in the area. Defendant stated that he was on his way to his girlfriend's house. However, he did not know the girl's name, her address, or her phone number. Officers looked inside the Navigator and saw a 2-way pager/communicator on the console. Agent Bell retrieved it. S/A Helen Landon had arrested UMLILW and seized a firearm with a laser scope and a magazine with extra ammunition from the Dodge pickup and a cell phone (which agent Bell believed had been on UMLILW's person). A comparison of the cell phones recent calls and the communicator revealed that they had called each other, and perhaps the CW, at or about the time of the delivery.

The defendant offered a tape, obtained from the government, which purports to be a conversation between a DEA agent and the CW after the arrest. He argues that it mentions a red Toyota also being in the area. It is unclear to the court the relevance of that circumstance, even if true. Whether the referenced vehicle is really the red Dodge pickup or a car, it does not seem to have anything to do with the circumstances of the stop of the Navigator.

The defendant testified at the hearing. He stated he was on his way to his girlfriend's (Kee) who lives on Savory street, he was taking a short cut, and he told this to the officers. He admits driving the Navigator and denies pulling off the side of the road. He stated he did not know anything about the communicator found in his vehicle. The court does not find his testimony credible.

**Analysis**

Defendant argues that at the time he was pulled over, he was seized within the meaning of the Fourth Amendment and that he was seized without a warrant. Thus, he argues, the burden is on the government to establish that the seizure was reasonable. *United States v. Winfrey*, 915 F.2d 216 (6th Cir. 1990). He asserts in argument and in the brief that at the time he was seized there was not probable cause to arrest him and that the seizure cannot be characterized as a "Terry" stop. Terry v. Ohio, 392 U.S. 188 (1968). In that case, the Supreme Court held that police officers may conduct an investigatory stop if they reasonably suspect an individual is participating in some criminal activity. Determining whether a seizure is an investigatory stop, rather than an arrest, depends on the reasonableness of the stop under the circumstances and requires examination of whether there are specific and articulable facts giving rise to reasonable suspicion and whether the degree of intrusion is reasonably related to the scope of the situation. *United States v. Hardnett*, 804 F.2d 353 (6th Cir. 1986). The Fourth Amendment requires some minimal level of justification but that level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. See, *INS v. Delgado*, 466 U.S. 210, 217 (1984); *United States v. Sokolow*, 490 U.S. 1 (1989). Here, the officer clearly had articulable facts supporting at least a reasonable suspicion of criminal activity. In a dark, desolate, industrial area, with little traffic and no activity other than the arranged drug delivery, without an traffic observed for almost an hour before the several hundred pound marijuana delivery was set to occur, with two unknown men expected to meet the CW, only one appearing in the pick up truck, and a Black Lincoln Navigator/SUV pulling out into the roadway immediately after the

conclusion of the transaction, and then attempting to leave the area when police emergency lights were activated, it can be nothing less than reasonable for an experienced law enforcement agent to conclude that the vehicle and its occupants might be engaged in criminal activity. This is clearly reasonable suspicion to stop the vehicle.

Given the circumstances of the area, the time of night, the amount of drugs involved, it was not unreasonable to order the occupant out of the SUV and handcuff him. After an explanation of visiting his girlfriend which the officer found questionable, a quick, cursory inspection of the inside showed a communication device. This was linked by an immediate visual inspection of the cell phone used by the participant in the drug transaction. At that time, officers placed defendant under arrest. The court finds that both the initial investigatory stop of defendant and the subsequent actions of the police officers are reasonable. The actions do not support defendant's position that the stop exceeds the bounds of *Terry*. In a case very similar to this, the circuit court found that the officers' actions in approaching the suspect's car with guns drawn and ordering the suspects out at gunpoint did not exceed the bounds of a permissible *Terry* stop. *United States v. Hardnett*, 804 F.2d 353 (6th Cir. 1986). The court held that the mere use or display of force did not convert the Terry stop into an arrest. *Id.* See also, *United States v. Jacob and Gallardo*, 377 F.3d 573 (6th Cir. 2004); *United States v. Garza*, 10 F.3d 1241 (6th Cir. 1993).

Thus, defendant has failed to show that there was any violation of the Fourth Amendment. Accordingly, it is recommended that defendant's Motion to Suppress be denied.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

 s/Virginia M. Morgan  
VIRGINIA M. MORGAN  
UNITED STATES MAGISTRATE JUDGE

Dated:   August 16, 2005

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                     CRIMINAL NO. 04-80335

       v.                              DISTRICT JUDGE VICTORIA ROBERTS

DERRICK WOODLEY (D-6),      MAGISTRATE JUDGE VIRGINIA MORGAN

        Defendant.
_____/

**REPORT AND RECOMMENDATION DENYING
DEFENDANT'S MOTION TO SUPPRESS**

---

**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the attorneys of record by electronic means or U.S. Mail on August 16, 2005.

                          s/Jennifer Hernandez
                          Case Manager to
                          Magistrate Judge Morgan

---