UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                               Honorable Victoria A. Roberts
                                               Case No. 04-80335

DERRICK WOODLEY, D-6

        Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

**I.    INTRODUCTION**

This matter is before the Court on Defendant's Objections to the Report and Recommendation recommending denial of Defendant's Motion to Suppress Evidence and Statements. The Court held a hearing on November 10, 2005. Upon review, the Court does not rely on the Report and Recommendation, but nonetheless **DENIES** Defendant's Motion to Suppress[1].

---

[1] Originally, the Defendant argued only that the initial stop was an illegal arrest. In a supplemental brief to the magistrate, the Defendant argued for the first time that the search and seizure of the evidence were illegal in their own right. At the November 10th, hearing, the government introduced new arguments intended to support a finding of probable cause for the search and seizure of Defendant's pager under the automobile exception to the warrant requirement. These arguments, post-hearing before the magistrate, are considered here.

**II.     BACKGROUND**

This action arises out of Defendant Derrick Woodley's arrest on February 5, 2003. Woodley was charged in a superceding indictment with conspiracy to distribute marijuana and attempted possession of marijuana.

On January 27, 2003, a large out-of-state marijuana delivery was intercepted by the Missouri State Highway Patrol. The Drug Enforcement Administration (DEA) became involved and conducted a controlled buy with the intended recipients. The driver of the shipment cooperated with the agents. The driver informant told agents the shipment was destined for Reginald Dancy in Detroit, Michigan. After a series of recorded phone calls between the informant, Reginald Dancy, and Dancy's associate known as "E," the delivery was scheduled for February 5, 2003 at a location near 23rd and Fort Street in Detroit. The agents expected more than one person may participate in the delivery. The informant was to make the delivery wearing a recorder.

On that date at approximately 8:42 p.m., a red Ford F-150 pick-up truck parked next to the informant's vehicle at 23rd and Fort Street[2]. The location is a sparse, light-industrial area near the underside of the Ambassador Bridge. The vehicles were parked just off 23rd Street in front of some brush, adjacent to a fence along the side of a closed business. No other traffic was observed in the area. No other vehicles were parked in the vicinity. The driver of the red Ford, since identified as Lamar Williams, got out and transferred a package from the informant's vehicle to his own. Law enforcement

---

[2]Agent Robert J. Bell testified at the hearing that it was a Dodge pick-up. However, the pleadings refer to it as a Ford. For the sake of consistency, the vehicle is referred to as a Ford here.

2

officers converged on Williams and arrested him.  A search revealed a laser-sighted firearm concealed in his sleeve.

Meanwhile, a black Lincoln Navigator driven by Woodley entered the area. There is some dispute as to whether the Navigator merely turned the corner onto 23rd Street -- which Woodley contends he did -- or whether he was pulling into the parking lot where the delivery took place.  According to the government, Woodley was pulling into the parking lot, but veered back into the street heading south on 23rd Street once he saw the authorities.  Woodley was stopped a short distance away.

Three police cars surrounded Woodley's truck.  Officers approached with guns drawn.  Woodley was handcuffed and given *Miranda* warnings.  When asked, Woodley claimed he was going to his girlfriend's house.  The government claims he could not provide a name, address or phone number for the girlfriend.  Woodley claims he provided a first name and street name but not a full address.  Following Woodley's statement, Agent Bell searched the Navigator.  Agent Bell seized a two-way text messaging pager.

Before Woodley's truck was searched, a cell phone was found on Lamar Williams following his arrest by Agent Helen Landon.  After Woodley's pager was seized, it was searched and compared to the cell phone found on Williams[3].  It was determined that Woodley's pager was in contact with Williams' cellular phone just prior to the delivery.  Subsequently, Woodley was formally arrested and taken to a Detroit police station by two Michigan State troopers.

---

[3]Retrieving the phone numbers from a pager constitutes a search for Fourth Amendment purposes.  *U.S. v. Ortiz*, 84 F.3d 977, 984 (7th Cir. 1996).

### III. APPLICABLE LAW AND ANALYSIS

#### A. Standard of Review

The district court conducts a de novo review of specific written objections to a magistrate's report and recommendation on dispositive motions. Fed. R. Civ. Pro. 72(b). Motions to suppress evidence in a criminal case are treated as dispositive motions. *Callier v. Gray*, 167 F.3d 977, 980 (6th Cir. 1999). The district court may make an independent evaluation of credibility based on the findings of the magistrate without holding a new hearing. *U.S. v. Raddatz*, 447 U.S. 667, 674-676 (1980).

#### B. Incorrect Factual Findings

Because the Court conducts a de novo review of the record as a whole, the factual findings of the magistrate challenged by Defendant, are irrelevant.

#### C. Did Officers Have Reasonable Suspicion to Stop the Defendant ?

The Defendant claims he was arrested from the inception, that there was no probable cause for his arrest, and that all evidence that flowed from his arrest should be suppressed. On the other hand, the government contends the stop was lawful under *Terry* and did not rise to the level of an arrest. The Court agrees with the government.

Under the Fourth Amendment, all searches and seizures must be based upon probable cause unless they fit within certain narrowly drawn exceptions. *U.S. v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993). The investigatory stop or "*Terry* stop" is one such exception. *Id. See Terry v. Ohio*, 392 U.S. 1 (1968). The *Terry* Court held that an officer may conduct a stop and frisk of an individual without probable cause in order to investigate possible criminal behavior as long as the officer is "able to point to specific

4

and articulable facts which give rise to a reasonable suspicion of criminal activity." *U.S. v. Hardnett*, 804 F.2d 353, 356 (6th Cir. 1986). "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *U.S. v. Cortez*, 449 U.S. 411, 417 (1981).

There is a two-prong test to determine the reasonableness of an investigatory stop. First, the court must determine "whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion." *Garza*, 10 F.3d at 1245 (citation omitted). Second, the court decides "whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Id*.

The Defendant contends there was no reasonable suspicion for the stop of his truck. The Defendant testified that he was driving by on 23rd Street as part of a shortcut to a girlfriend's house. [Transcript p. 53-54]. The Defendant claims he did not turn into the parking lot where the controlled delivery occurred, and, therefore, officers had no reason to suspect him of criminal activity.

To bolster his version of the events, the Defendant refers to a tape recording from the informant following the arrests. The comments were recorded by the device worn by the informant. The Defendant claims an agent describes the Navigator as "tricked out...with big ass speakers in the back, thumping, and the whole nine yards." [Defendant's Objections, p. 5]. Allegedly the informant was surprised to hear there were two people and stated that he "didn't even see" the Navigator drive down 23rd Street. *Id*.

From this the Defendant argues it is clear that he did not pull into the parking lot where the delivery occurred because the informant would have seen or heard him.

The government contends the tape should not be considered since there was no foundation laid as to timing and identity of the individuals on the tape. Regardless, the government says the person the Defendant describes as an agent is calling the truck a "thumper" – meaning it *has* a sub-woofer -- not that it *was* "thumping" (loud) at the time of the arrest. The exact word used is indiscernible.

The government refutes the Defendant's account of the events and relies on the testimony of Agent Bell. Agent Bell testified that the Defendant "came off of Fort Street and turned south onto 23rd." [Transcript p. 22]. Agent Bell further testified that the Defendant began to pull into the parking lot but turned back onto 23rd Street when he saw the officers approaching. *Id.* at 25.

The Court finds the testimony of Agent Bell to be more credible than Defendant's.

Based on the evidence presented and the circumstances surrounding the stop of the Defendant, the Court finds the officers had reasonable suspicion to stop the Defendant for the following reasons:

 (1) The testimony of Agent Bell that the Defendant began to pull into the parking lot when the delivery was taking place;

 (2) The nature of the area where the delivery was occurring;

 (3) The officers' reasonable belief that more than one individual would complete the drug transaction [Transcript p. 38];

 (4) The Defendant's arrival at the exact time of the drug transaction; and

 (5) The lack of other traffic in the area.

Agent Bell's belief that the Defendant was headed to the delivery location at the time of the stop is reasonable and contradicts the Defendant's testimony that he was taking a shortcut to a girlfriend's house.  The officers had a reasonable and articulable suspicion that Woodley was to be involved in the drug transaction.   Accordingly, it was a lawful investigative stop.

**The Initial Stop Did Not Constitute An Arrest**

Based on the circumstances, the initial stop did not exceed the bounds of *Terry* sufficient to constitute a *de facto* arrest.

The Defendant argues that the circumstances of his initial stop went beyond an investigative stop and constituted an arrest.  The Defendant alleges several factors which he claims made the initial stop an arrest: (1) officers blocked his truck in with numerous cars; (2) officers approached with guns drawn; (3) he was ordered from his truck with his hands up; (4) he was handcuffed; and (5) he was read *Miranda* warnings.

"The determination of whether an arrest has occurred is not dependent on whether the citizen is formally placed under arrest or whether the seizure would be considered an arrest under state law.  Rather, a seizure may be considered an arrest, and probable cause for the seizure may be required, when a detention is 'in important respects indistinguishable from a traditional arrest.'  However, given the 'endless variations in the facts and circumstances,' there is certainly no 'litmus-paper test for determining when a seizure exceeds the bounds of an investigative stop' and becomes an arrest."  *Hardnett*, 804 F.2d at 356 (citations omitted).  "[T]he mere use or display of force in making a stop will not necessarily convert a stop into an arrest."  *Id.* at 357.

Factors the court should consider when determining if an investigative stop has

7

graduated to an arrest include: (1) the transportation of the detainee to another location; (2) significant restraints on the detainee's freedom of movement involving physical confinement or other coercion preventing the detainee from leaving police custody; and (3) the use of weapons or bodily force. *U.S. v. Lopez-Arias*, 344 F.3d 623, 627 (6th Cir. 2003)(citation omitted).

The government does not dispute any of the Defendant's allegations regarding the manner in which the stop was performed. However, the government contends that its actions were reasonable under the circumstances. The government had reasonable suspicion that the Defendant was connected to the drug transaction. *See* Transcript p. 26. Additionally, officers found a gun on Lamar Williams at the time of the Defendant's stop. [Transcript p. 44].

Courts look to the surrounding circumstances that give rise to a fear of personal safety for the officers to determine if the actions taken were reasonably necessary for the protection of officers. *U.S. v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993). "Such reasonable precautions include drawing and displaying weapons, the immediate removal of the occupants from the subject vehicle, and placing the occupants in handcuffs. Further, the fact that several police cars (as opposed to one) were used to accomplish the *Terry* stop does not alter this analysis." *U.S. v. Marxen*, 410 F.3d 326, 332 (6th Cir. 2005). While the stop in *Marxen* involved an individual driving a vehicle suspected of being used in an armed robbery, the analysis is also applicable in a drug trafficking case. As the Sixth Circuit noted, narcotic transactions frequently involve weapons, and precautions during *Terry* investigations are reasonably necessary. *See U.S. v. Bell*, 762 F.2d 495, 500 (6th Cir. 1985) and *U.S. v. Lane*, 909 F.2d 895, 899 (6th

Cir. 1990).

"When police officers reasonably fear that suspects are armed and dangerous, they may order suspects out of a car and may draw their weapons...[f]urther, detention in a police cruiser does not automatically transform a *Terry* stop into an arrest...[n]or does the use of handcuffs exceed the bounds of a *Terry* stop, so long as the circumstances warrant that precaution." *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 814-815 (6th Cir. 1999). In this case, officers suspected the Defendant was involved in the drug transaction. Further, they suspected that more than one individual would be involved, based on recorded conversations of a police informant and two then unidentified suspects. Additionally, officers found a handgun on Williams. Therefore, the officers' actions were reasonable for their own safety.

The Defendant also claims that the reading of his *Miranda* warnings made this an arrest. The reading of *Miranda* warnings does not "automatically convert a *Terry* stop into an arrest," but it is evidence that the seizure is more like an arrest. *U.S. v. Obasa*, 15 F.3d 603, 608 (6th Cir. 1994). *See also, Lopez-Arias*, 344 F.3d at 628. Because the other factors were reasonable under the circumstances, the reading of *Miranda* warnings is not sufficient to turn an otherwise reasonable *Terry* stop into an arrest. Based on the officers' reasonable suspicion that the Defendant was armed, and the reasonableness of the precautions taken by the officers, the initial stop of the Defendant did not exceed the bounds of a *Terry* investigative stop and did not constitute an arrest.

### D.     The Search of the Navigator

A protective sweep of the Navigator was similarly justified by the same factors which justified the initial investigative stop of the Defendant. The search of the

passenger compartment of a vehicle is permissible if the police have a "reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous..." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993)(citation omitted).

As discussed above, officers had a reasonable belief that the Defendant was armed and dangerous. Therefore, a "protective sweep" of his vehicle was reasonable considering officers found a gun on Williams and could reasonably presume that the Defendant was armed as well. Further, as will be discussed more fully below, the officers had probable cause to conduct a full search of the Navigator under the automobile exception to the warrant requirement.

### E. The Seizure and Search of the Two-Way Pager

Officers were not justified under *Terry* to seize and search the two-way pager found in the Defendant's truck, inasmuch as that went beyond a search "limited to that which is necessary for the discovery of weapons which might be used to harm the officers or others." *U.S. v. Vite-Espinoza*, 342 F.3d 462, 466 (6th Cir. 2003). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Id.*

Nonetheless, the seizure and search of the pager was justified under the "automobile exception" to the warrant requirement. Under the "automobile exception," "in cases where there was probable cause to search a vehicle, a search is not

10

unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained." *U.S. v. Cope*, 312 F.3d 757, 775 (6th Cir. 2002)(citation omitted).  The automobile exception is applicable in nonexigent circumstances, so long as the vehicle is mobile and officers have probable cause to believe it contains incriminating evidence. *Id.*  But, the automobile exception is an exception to the warrant requirement, not probable cause, and the exception still demands that probable cause precipitate the search and seizure.

"The test for probable cause is simply whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.*  "Determining whether probable cause existed at the time of the search is a commonsense, practical question to be judged from the totality-of-the-circumstances.  In determining whether probable cause exists, we may not look to events that occurred after the search or to the subjective intent of the officers; instead, we look to the objective facts known to the officers at the time of the search." *Smith v. Thornburg*, 136 F.3d 1070, 1074-1075 (6th Cir. 1998).  If officers had probable cause to search the Navigator, they had probable cause to search containers inside. *U.S. v. Ross*, 456 U.S. 798, 823 (1982).  The pager is a container. *Ortiz*, 84 F.3d at 984 *citing U.S. v. Chan*, 830 F.Supp. 531, 534 (N.D.C.A. 1993).

The government offers two justifications for its seizure and search of the pager. First, the government argues it had probable cause to search the Navigator based on: (1) the factors which established reasonable suspicion for the *Terry* stop; and (2) the unbelievable statement by the Defendant that he could not provide information about where he was going or the name of whom he was going to see.  Second, the

government contends it had probable cause to search the pager itself.

### 1. Did the "Unbelievable Statement" Transform A Reasonable Suspicion Into Probable Cause For A Full Search Of The Navigator?

Agent Bell testified that the Defendant said he was on his way to a girlfriend's house, but could not provide a name, address or telephone number. [Transcript, p. 29]. This so-called "unbelievable statement" established probable cause, the officers say, for their search of the Navigator. During the search, officers found a pager that they subsequently learned was in contact with Lamar Williams' cellular phone just prior to the delivery. They claim this information provided their probable cause to arrest the Defendant.

Officers had probable cause to search the Navigator based on the factors that provided reasonable suspicion justifying the *Terry* stop, as outlined above, coupled with the Defendant's false statement that he was on his way to a girlfriend's house. The Court does not credit Defendant's testimony that he provided a name and a street to his girlfriend's house (at an address that would have been impossible to get to, given his direction of travel). The facts and circumstances, taken together, resulted in a fair probability that the Defendant was involved in the transaction and that evidence would be found in the Navigator. The Defendant's false response, added to the officers' reasonable suspicion and elevated their reasonable suspicion to probable cause.

False responses can elevate reasonable suspicion to probable cause. However, merely unconvincing responses do not provide probable cause unless and until they are shown to be false. In *U.S. v. Sholola,* 124 F.3d 803 (7th Cir. 1997), the defendant presented a credit card and driver's license to a bank teller and received a cash

advance. An off-duty officer working at the bank followed the defendant to the parking lot because he was suspected of fraud. When questioned, the defendant gave a name and address different than the one on the license. "What transformed this reasonable suspicion into probable cause was [the defendant's] inability to accurately respond to the questions of [officers]..." *Id.* at 815. *See also*, *U.S. v. Saperstein*, 723 F.2d 1221 (6th Cir. 1983)(Suspect checked an empty bag at departure and returned with a full bag and told officers he was carrying the bag for someone else and did not know what was in the bag. The court held the suspect's failure to satisfy discrepancies did not give rise to probable cause to search the bag.); *U.S. v. Jackson*, 652 F.2d 244 (2nd Cir. 1981)(Statement from individual suspected of bank robbery that he was in the area to drop his mom off was suspicious because officers saw him drive past street where he claimed to have dropped her off. While the statement added to reasonable suspicion, it did not provide probable cause.); *U.S. v. Herbst*, 641 F.2d 1161 (5th Cir. 1981)(*relying on U.S. v. Berd*, 634 F.2d 979 (5th Cir. 1981))(Three suspects fitting drug courier profile gave false statements to ticketing agent and officers regarding their names and association. Their suspicious statements transformed a reasonable suspicion into probable cause.).

The Defendant's statement that he was on his way to a girlfriend's house, whose name, address or telephone number he could not give, was the same as the false statements cited above that elevated reasonable suspicion to probable cause. The Defendant demonstrated an "inability to accurately respond to the questions of officers." *Sholola, supra*. Officers treated the statement as false because although nothing explicitly disproved the Defendant's allegation that he was on his way to a girlfriend's

house, his inability to provide any information whatsoever made the statement impossible to believe. Consequently, officers had probable cause to search the Navigator without a warrant pursuant to the automobile exception. Therefore, the seizure and search of the pager, as part of a full search of the Navigator, was justified.

### 2. Probable Cause Based on Recent Communication

The government offers a second justification for searching the pager. It contends that it had probable cause to search the pager even if it did not have probable cause to search the Navigator, because the pager was in a container inside the truck. "Police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991). The government claims agents had probable cause to believe the pager contained incriminating evidence -- proof that the Defendant was in recent contact with the driver of the red Ford. *Acevedo, supra*.

The government argues the basis for probable cause was: (1) the factors that support reasonable suspicion; (2) the unbelievable statement; (3) the fact that the driver of the red Ford made recent calls from his cell phone; and (4) the fact that the Defendant's pager was sitting in the console as if it was recently used.

The record is unclear as to whether Agent Bell knew at the time he seized the pager, that there were phone calls recently made from Lamar Williams' cell phone. However, because officers had probable cause to search the Navigator pursuant to the automobile exception, they had probable cause to search the pager found inside. *U.S. v. Ross*, 456 U.S. 798, 823 (1982). The Court, therefore, does not rely on this argument by the government in finding there was probable cause to search the pager.

14

**V.     CONCLUSION**

For the foregoing reasons, the Court does not rely on the Report and Recommendation. Nonetheless, it **DENIES** Defendant's Motion to Suppress Evidence and Statements.

**IT IS SO ORDERED.**

                                          s/Victoria A. Roberts
                                          **Victoria A. Roberts**
                                          **United States District Judge**

**Dated:  November 22, 2005**

> **The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 22, 2005.**
>
> **s/Linda Vertriest**
> **Deputy Clerk**